440 So.2d 1358 (1983)
LAKE CHARLES MEMORIAL HOSPITAL, Plaintiff-Appellee,
v.
Roselie SINEGAL, Defendant-Appellee,
v.
LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY, Defendant-Appellant.
No. 83-201.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
*1359 Plauche, Smith & Nieset, Michael J. McNulty, III, Lake Charles, for defendant-appellant.
Wilford D. Carter, Lake Charles, for defendant-appellee.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Stephen Polito, Lake Charles, for plaintiff-appellant.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
DOMENGEAUX, Judge.
The only issue presented on appeal in this case, Lake Charles Memorial Hospital v. Roselie Sinegal, and the case of Roselie Sinegal v. Louisiana Health Service & Indemnity Company (Blue Cross), 440 So.2d 1358 (Our No. 83-202) (La.App. 3rd Cir. 1983), which cases were consolidated at trial, is whether Blue Cross is responsible for certain hospital expenses in the amount of $2,399.40 incurred by Roselie Sinegal, its insured, as a result of Mrs. Sinegal's hospitalization at Lake Charles Memorial Hospital.
On August 1, 1980, a policy of hospitalization and major medical insurance was issued by Blue Cross to Mrs. Sinegal. The policy insured her, among other things, against expenses incurred due to hospital confinement.
On October 31, 1980, Mrs. Sinegal was hospitalized for eight days in Lake Charles Memorial Hospital for treatment of acute pernicious anemia and tests in order to determine the cause of her anemia. Following her release from the hospital Mrs. Sinegal filed a claim with Blue Cross for recovery of the hospital expenses and medical services. Blue Cross denied coverage on the basis of an exclusionary clause contained in the contract of insurance. The policy states as follows:

"ARTICLE XIIEXCLUSIONS
A. No health care allowance will be provided for:
1. Services rendered during the first year for, or as a result of any ailment, disease, or physical condition, the symptoms of which exhibit themselves before the member's original effective date regardless of whether the diagnosis, *1360 the condition, or the disease has been established...."
Inasmuch as Mrs. Sinegal failed to pay her bill, Lake Charles Memorial Hospital sued her for those hospital and medical expenses. In that suit (Our No. 83-201) Mrs. Sinegal third-partied Blue Cross for indemnification. The amount involved was the sum of $2,399.40 plus attorney's fees. Additionally, Mrs. Sinegal filed a separate suit against Blue Cross for some $600.00 (Our No. 83-202), representing expenses for doctor's bills and laboratory tests.[1]
At trial Lake Charles Memorial Hospital and Mrs. Sinegal stipulated that she was liable to the hospital for the full amount of the original demand ($2,399.40) as well as attorney's fees in the amount of $150.00, in addition to court costs and legal interest.
Following trial, judgment was rendered in favor of Lake Charles Memorial Hospital for the stipulated amounts against Mrs. Sinegal, and in favor of Mrs. Sinegal on her third party claim against Blue Cross for indemnification. Blue Cross has appealed.
We are to determine whether the symptoms of Mrs. Sinegal's anemic condition exhibited themselves before the issuance of the insurance contract, and is thereby subject to the exclusionary clause which denies coverage.
To support the contention that Mrs. Sinegal is precluded from recovering for the medical services rendered, Blue Cross relies upon the holdings of Smith v. Republic National Life Insurance Company, 335 So.2d 739 (La.App. 2nd Cir.1976), and Hall v. National Life and Accident Insurance Company, 383 So.2d 74 (La.App. 3rd Cir.1980).
In Smith, the court found that the insurance policy did not cover that plaintiff's sickness because the condition of the disease first manifested itself prior to the application for insurance.
In Hall, this Court held that hospitalization for treatment of sicknesses which existed prior to the issuance of the insurance contract was not covered under the terms of the contract. The record in Hall substantiated the factual findings made by the trial judge. The trial judge determined that the plaintiff in that case did not contract the sicknesses after the requisite 28-day suspensive period from the effective policy date. The plaintiff in Hall admitted at trial that he had been hospitalized for the identical disorders shortly before applying for the hospitalization insurance at issue. Further, that plaintiff's treating physician stated in a report filed into evidence that the plaintiff's hospitalization was the result of recurring sicknesses which predated the insurance policy by at least six years. The court ruled, in pertinent part, that:
"[s]ince the sicknesses for which the plaintiff was hospitalized in July, 1977, existed prior to the issuance of the policy, the policy did not provide coverage for the expenses incurred by plaintiff in the July, 1977, hospitalization."
At 75.
In the case sub judice, however, the record confirms the trial court's judgment that recovery should be allowed on behalf of the plaintiff. The factual findings made by the trial judge are supported by reasonable inferences of credibility and from medical testimony and hospital records.
The appellate court should not disturb factual findings in the absence of manifest error. Arceneaux v. Domingue, 365 *1361 So.2d 1330 (La.1978). In our review of the facts we determine that there is a reasonable factual basis for the findings of the trial court; we further determine that the record establishes that the finding was not clearly wrong. Arceneaux, at 1333.
The burden of proof rests with the insurer to establish a pre-existing condition of the insured. See Dance v. Southern Surety Co. of New York, 16 La.App. 373, 134 So. 725 (La.App. 2nd Cir.1931). We conclude that there was no manifest error in the trial judge's conclusion that the evidence failed to establish that Mrs. Sinegal's condition existed prior to the effective date of the insurance policy. The evidence disclosed at trial did establish that on June 30th and July 1st, 1980, Mrs. Sinegal exhibited symptoms of shortness of breath, tension headaches, nervousness, fatigue, and weakness. During the office visit with Ben Guilbeau, M.D., Mrs. Sinegal's physician of ten years, the condition was diagnosed as anxiety and depression. Because of financial reasons, she then went voluntarily to Moss Regional Hospital (a charity hospital) on July 1, 1980, for further diagnosis and treatment. Mrs. Sinegal related the same symptoms to the attendant out-patient physician at Moss Regional Hospital. She was treated with tranquilizers after a diagnosis of tension headaches and anxiety. She was then sent home. It was noted on her hospital chart that her condition had improved upon being released.
At trial, both Doctor Anderson (Doctor Guilbeau's partner who admitted Mrs. Sinegal to Lake Charles Memorial Hospital on October 31, 1980) and Doctor Guilbeau testified that the symptoms which Mrs. Sinegal complained of could be attributed to anemia or to several other conditions, including anxiety and depression. Doctor Anderson further testified that in his opinion, on October 31, 1980, Mrs. Sinegal suffered from severe anemia (based upon the classic symptoms displayed and the blood tests conducted in the office) which he said was probably "a longer standing" anemia. Doctor Anderson related this condition back to June of 1980, as indicated by the medical history taken from the patient. However, Doctor Guilbeau testified that the diagnosis of anxiety in JuneJuly of 1980, was definite and unquestionable "regardless if she [Mrs. Sinegal] was anemic or not." Doctor Guilbeau further testified at trial that during the ten years that Mrs. Sinegal had been his patient she had never been anemic, that he first became aware of her anemic condition in November of 1980, and that it was impossible to state exactly when the anemia began. Doctor Guilbeau could not determine with any medical certainty the period of time in which the anemic condition commenced.
Considering this evidence as a whole, there has been no showing of manifest error on the part of the trial judge in finding that the insurer had failed to establish that the insured's symptoms in JuneJuly, 1980, conclusively resulted from the condition of acute pernicious anemia. See Cunniffe v. American Security Life Insurance Company, 165 So.2d 39 (La.App. 4th Cir.1964). Additionally, we do not perceive any manifest error in the trial judge's determination that the evidence was insufficient to show that the insured's condition existed prior to the effective date of the insurance contract or that the medical services rendered in OctoberNovember, 1980, were for an ailment, disease, or physical condition, the symptoms of which exhibited themselves before the effective date of the policy. See Cunniffe, at 42.
For the above and foregoing reasons the judgment of the trial court is affirmed, with all costs assessed against Blue Cross.
AFFIRMED.
NOTES
[1] Mrs. Sinegal's additional claim in that suit was denied, and she has not appealed that adverse judgment. Blue Cross however has appealed even though Mrs. Sinegal was denied recovery in that suit. We surmise inasmuch as the trial court judgment listed both consolidated cases in its caption and Blue Cross' appeal was likewise captioned, that Blue Cross' appeal in No. 83-202 was inadvertent. Under these circumstances, there is nothing to review, hence we will dismiss that appeal. La.C.C.P. Arts. 2082, 2083, 2133; Bond v. Commercial Union Assurance Companies, 387 So.2d 617 (La.App. 3rd Cir.1980), reversed in part on other grounds, 407 So.2d 401 (La.1981).