472 So.2d 299 (1985)
Stephen MONCRIEF, Plaintiff-Appellant,
v.
BLUE CROSS-BLUE SHIELD OF ARKANSAS, Defendant-Appellee.
No. 84-484.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
James D. Davis, Alexandria, for plaintiff-appellant.
Trimble, Percy, Smith, Wilson, Foote, Walker & Honeycutt, James T. Trimble, Jr. and Alonzo P. Wilson, Alexandria, for defendant-appellee.
Before GUIDRY, KNOLL and KING, JJ.
GUIDRY, Judge.
This is a suit by Stephen Moncrief to recover hospital benefits on behalf of his wife, Wanda Moncrief, pursuant to a hospitalization insurance policy issued to plaintiff by defendant, Blue Cross-Blue Shield of Arkansas.[1] Plaintiff also seeks penalties and attorney's fees for the alleged unreasonable refusal of defendant to pay such benefits.
By judgment dated February 27, 1984, the trial court found in favor of defendant, *300 denying plaintiff's demands for hospital benefits. Plaintiff appeals that judgment.
The issues on appeal are: (1) whether Mrs. Moncrief had a pre-existing illness which justified denial of coverage under the terms of the insurance policy; and, (2) if she did not have a pre-existing illness, should penalties and attorney's fees be awarded to plaintiff.
Mr. and Mrs. Moncrief moved from Tennessee to Pineville, Louisiana, in January of 1981, where Mr. Moncrief had secured a job at Wendy's Restaurant. Pursuant to his employment, plaintiff was issued a hospitalization insurance policy, with an effective date of May 1, 1981. Mr. and Mrs. Moncrief were both covered under the insurance policy.
On May 12, 1981, Mrs. Moncrief was examined by Dr. Thomas A. Lacour pursuant to complaints of weight loss, weakness and general tiredness. Mrs. Moncrief stated that she had lost thirty pounds over the past three months. At the time of this visit, Mrs. Moncrief, who is 5 feet, 8 inches tall, weighed 98½ pounds. After securing her medical history and generally examining her, Dr. Lacour diagnosed her condition as anorexia nervosa. Mrs. Moncrief was admitted to St. Frances Cabrini Hospital the following day for further evaluation and therapy. She remained hospitalized until May 23, 1981. Upon her discharge, Mrs. Moncrief had gained ten pounds.
Dr. Lacour again examined Mrs. Moncrief on May 29, 1981. At this time, she had gained 11½ pounds since her initial visit. On her next office visit to Dr. Lacour, Mrs. Moncrief had lost six pounds, bringing her weight down to 104 pounds. Mrs. Moncrief was hospitalized again on July 6, 1981 for treatment of anorexia nervosa and alcoholism. While hospitalized, Mrs. Moncrief suffered from seizures diagnosed as delirium tremors (DT). She was discharged on July 12, 1981.
This suit was filed on June 30, 1982, after defendant refused to pay the hospital expenses incurred during Mrs. Moncrief's two stays at St. Frances Cabrini Hospital. Defendant answered the suit contending that Mrs. Moncrief's anorexia nervosa was a pre-existing condition or disease which was specifically excluded under an exclusionary clause contained in the contract of insurance.
The pertinent provisions of the insurance policy relied upon by defendant are found in Article VII and read as follows:
"A. No Benefits Or Services Of Any Kind Are Provided Under This Certificate For: ...
2. A. Treatment of conditions or diseases existing prior to the effective date of this Certificate until such Certificate has been continuously in effect for a period of at least twelve (12) consecutive months following the effective date of this Certificate. This exclusion includes, but is not limited to, all conditions or diseases which may become aggravated or acute after the effective date of this Certificate.
B. A condition or disease which existed prior to the effective date of this Subscriber's Contract is one which caused symptoms or other manifestations prior to such effective date in such a manner as would cause an ordinarily prudent person to seek diagnosis, care or treatment."
Mrs. Moncrief was the sole witness testifying at trial. She testified that she went to see Dr. Lacour because of general tiredness and the fact that she could not gain any weight. She testified that "It wasn't that I was losing it that fast, but slowly I knew I was beginning to." She stated that she started losing weight and feeling tired right after she and her husband moved to Louisiana, which was in January of 1981. She attributed her condition to the stress occasioned by the move. When her condition continuously worsened, she decided to see a doctor.
Dr. Lacour's deposition of May 4, 1983 was admitted into evidence. In his deposition, Dr. Lacour testified that Mrs. Moncrief's chief complaint on May 12, 1981 was her weight loss. He testified that Mrs. Moncrief told him that she had lost 30 *301 pounds over the past three months. This fact is substantiated by a letter written by Dr. Lacour dated August 19, 1981, wherein he summarized Mrs. Moncrief's initial visit. In this letter, he stated that Mrs. Moncrief had a thirty pound weight loss over a period of three months.
It was also brought out in Dr. Lacour's deposition that Mrs. Moncrief's second hospitalization was due in part to alcoholism. Dr. Lacour testified that he was unaware of any problem Mrs. Moncrief may have had with alcohol on her first visit and subsequent hospitalization. He learned of her problems with alcohol from her husband and the nurses who attended her during her second hospitalization in July of 1981. Dr. Lacour stated that her alcoholism could have been the cause of her initial weight loss, but that there was no way of knowing for sure. He concluded that her hospitalization in May of 1981 was due to anorexia nervosa and that her hospitalization in July of 1981 was due to anorexia nervosa with secondary complications of alcoholism.[2]
In his written reasons for judgment, the trial judge denied coverage under the insurance policy stating:
"In the instant case the Court is led to the abiding conclusion that symptoms of claimant's medical condition commenced arising (according to her own testimony) right after she moved to Alexandria, which was in the first part of January, 1981. Her condition preexisted the effective date of policy coverage to such an extent as to be excluded from coverage under the policy."
Plaintiff contends that the trial court erred in denying insurance coverage for treatment of Mrs. Moncrief's anorexia nervosa, which was not diagnosed until after the effective date of the policy. Plaintiff's basic assertion is that, since Mrs. Moncrief's condition was not diagnosed as such until after the policy went into effect and she was not aware that she had the particular illness, her claim should not have been denied as falling under the exclusionary clause of the policy.
An insurance policy is a contract between the parties, and while all ambiguities must be construed in favor of the insured and against the insurer, courts have no authority to change or alter its terms under the guise of interpretation when such terms are couched in clear and unambiguous language. Graham v. Equity National Life Insurance Company, 373 So.2d 988 (La.App. 3rd Cir.1979), writs denied, 376 So.2d 319 and 376 So.2d 320 (La. 1979); Remondet v. Reserve National Insurance Company, 433 So.2d 792 (La.App. 5th Cir.1983), writ denied, 441 So.2d 216 (La.1983).
In the instant case, we find no ambiguity in the exclusionary clause contained in Article VII of the policy in question. It specifically defines a pre-existing condition or disease to be "one which caused symptoms or other manifestations prior to such effective date in such a manner as would cause an ordinarily prudent person to seek diagnosis, care or treatment."
The courts place a stringent burden of proof on the insurer to prove that an illness which it contends is excluded from coverage as a pre-existing condition did in fact predate the stipulated effective date of the policy. Phelps v. Southern National Insurance Company, 83 So.2d 463 (La. App. 2nd Cir.1955); Lake Charles Memorial Hospital v. Sinegal, 440 So.2d 1358 (La. App. 3rd Cir.1983). In the instant case, we find that defendant successfully carried this burden. By Mrs. Moncrief's own admission the symptoms of anorexia nervosa (weight loss and tiredness) manifested themselves from three to five months prior to the effective date of the insurance policy *302 in such a manner as would cause an ordinarily prudent person to seek diagnosis, care or treatment. We therefore conclude that there is no clear error in the trial court's denial of plaintiff's claim for hospitalization benefits. Considering this conclusion, we need not consider the issue of penalties and attorney's fees.
For the above and foregoing reasons, the judgment of the trial court is affirmed with all costs assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] The answer of defendant and the judgment rendered in this case indicates that the correct name of defendant is Arkansas Blue Cross and Blue Shield, Inc.
[2] Had Dr. Lacour determined that either of Mrs. Moncrief's hospitalizations were due primarily to her alcoholism, recovery could have been denied on the basis of the exclusionary clause provided under Article VII of the policy, which states:

"A. No Benefits Or Services Of Any Kind Are Provided Under This Certificate For:
(6) Services for the treatment of any ailment or physical condition arising from the use of drugs or alcohol."