Steven Broussard, Lake Charles, La., for plaintiff.

Matthew. J. Ungarino, Metairie, La., for defendant.

### William BRADY

v.

### EMPIRE BLUE CROSS/BLUE SHIELD.

Civ. A. No. 88–2351–LC.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

March 6, 1990.

### OPINION

VERON, District Judge.

This matter arises out of a claim of plaintiff's, William Brady, the insured, against Defendant, Louisiana Health Service and Indemnity Company, for payment of medical expenses incurred. Plaintiff seeks damages in the amount of $35,000, together with penalties and attorney's fees and interest from the current defendant, Empire Blue Cross/Blue Shield.

### BACKGROUND

William Brady filed suit on June 30, 1988, in the Fourteenth Judicial District Court for the Parish of Calcasieu, State of Louisiana against Louisiana Health Service and Indemnity Company, seeking alleged health insurance benefits. In the First Supplemental and Amended Petition, plain-

tiff amended his original petition to change the name of the Defendant to Empire Blue Cross and Blue Shield, a foreign insurance corporation and to dismiss Louisiana Health Service and Indemnity Co. The new Defendant petitioned to have the suit removed to the U.S. District Court for the Western District of Louisiana pursuant to 28 U.S.C. § 1441. This court has jurisdiction under 28 U.S.C. § 1332 as plaintiff is a citizen of Louisiana and Defendant corporation is incorporated in New York with its principal place of business outside Louisiana.

## FINDINGS OF FACT

Plaintiff, William Brady and his wife, Rita, were insured under Empire Blue Cross/Blue Shield, Policy # 354344429 S19, effective August 20, 1987. Mr. Brady testified that he negotiated for health insurance as a benefit when he accepted his job. Brady is an employee of Halko Industries, but was listed on insurance documents as an employee of Airline Products Services, Inc. He was unaware of this fact before the filing of this suit. In July, 1987, Plaintiff and his wife moved to Lake Charles, Louisiana, where, for the first time, Mrs. Brady experienced shortness of breath. She did not, however, have chest pains and attributed her shortness of breath to the Louisiana humidity, to which she was not accustomed.

In October of 1987, Mrs. Brady, while eating an ice cream cone, experienced numbness in her left arm and severe chest pains, for the first time. She then went to a hospital emergency room. Mrs. Brady consulted Dr. Gary Roberts who stated in her history that she "had a one year history of chest pain," although she had never before been treated for a heart condition. The doctors she subsequently saw copied the history taken by Dr. Roberts, thus perpetuating the idea of a prior heart condition. As a result of the October 1987 attack, Mrs. Brady underwent double by-pass surgery in November of 1987.

Plaintiff submitted a claim to Defendant. Defendant initially refused to admit that a policy existed covering the Bradys. Defendant claimed that because Mr. Brady was employed by Halko Industries, Inc., rather than Airline Products Services, Inc., with whom Defendant had the policy, the Bradys were not covered under this policy. This was in spite of the fact that the two policies are owned by the same person and the premiums for the Bradys had been paid and accepted. Only after Plaintiff produced a copy of the policy, complete with a policy number, did Defendant agree that Plaintiff was covered under an existing policy.

On March 22, 1988, plaintiff received a letter stating that the claim was being denied as it had been determined that the expenses resulted from a pre-existing condition. There is contradictory evidence concerning subsequent reviews of this claim. Plaintiff alleges that a review was requested on May 5, 1988, to which Defendant never responded. Defendant claims to have evaluated Plaintiff's claim on four separate occasions. The first was on March 14, 1988, when Defendant says it closed the claim due to a lack of requested medical records. On March 22, 1988, the claim was rejected and Plaintiff was told that this was due to a pre-existing condition. Next, a supervisor rejected the claim on August 11, 1988, still citing a pre-existing condition. Finally, the medical staff reviewed the claim on August 17, 1988, and found the rejection to have been correct. Plaintiff was not notified of these subsequent reviewals, if they occurred, and, in any event, Defendant never altered its original decision. Although Defendant did finally stipulate with Plaintiff to pay the disputed claims, it did so only after more than a year had passed since Plaintiff filed the claim.

## ANALYSIS OF LAW

The initial issue in this case, i.e., whether Defendant must pay Plaintiff's claims, has been resolved. Defendant has stipulated to pay Plaintiff for each of the disputed claims. We order only that this stipulation be honored.

There is, however, a further issue of whether to award penalties and attorney's

fees. The Court finds that the Employee Retirement Insurance Security Act of 1974, 29 U.S.C. §§ 1001–1381 (ERISA) does not apply in this instance. In order for this act to apply, the health insurance coverage must be part of an ERISA "plan." Congress has chosen to treat "accident or health insurance" and "accident or health plan[s]" separately, thus reinforcing the "conclusion that ERISA plans are broader in concept than pure insurance transactions". *Taggart v. Life and Health Benefits Administration*, 617 F.2d 1208, 1210 (5th Cir.1980). Such a plan is defined as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.

ERISA, 29 U.S.C.A. § 1002(1). The first requirement, therefore, is that there exist a "plan, fund, or program." The Fifth Circuit held that the bare purchases of health insurance where, as here, the "purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits" is not sufficient to establish an ERISA plan. *Taggart*, 617 F.2d at 1208. In this instance, the employer is not an administrator, a manager, or a trustee of the policy. The employer makes no decisions concerning how the policy's monies are invested or whether or not claims are granted. If claims are denied, the employee cannot sue the employer but must sue the insurer. The employer's sole contribution was to contract with the insurer to purchase the policy. Simply put, the purchase of an insurance policy by an employer for its employees does not, by itself, constitute a plan. *Donovan v. Dillingham*, 688 F.2d 1367 at 1373 (11th Cir.1982). Mr. Brady and his fellow employees did have benefits other than health insurance. They also had paid vacations, sick leave, etc., but none of these were part of the policy now under consideration. This policy covered health benefits only. Although it was stated, in *Credit Managers Assoc. v. Kennesaw Life & Accident Ins.*, 809 F.2d 617 (9th Cir. 1987), that an employer who does nothing more than "arrange for a 'group-type insurance program,'" can establish an ERISA plan "unless [the employer] is a mere advertiser who makes no contributions on behalf of its employees," this is a 9th Circuit case and this comment was dicta. We are not, therefore, constrained to follow or flesh out the effects, consequences or ramifications of this line of reasoning.

If a plan is covered by ERISA, the Act does require that certain reporting and filing requirements be satisfied. *Donovan*, 688 F.2d at 1372. The mere fact that compliance with these requirements has not been made will not, in itself, refute the existence of a plan. *Donovan*, 688 F.2d at 1373. In this instance, however, the record is severely lacking. The defendants have submitted no documentation demonstrating their compliance with these requirements, nor have they provided the court with proof that they did anything more than purchase the policies for the employees. There has been no evidence that they "directly or indirectly own, control, administer, or assume responsibility" for the plan. *Taggart*, 617 F.2d 1208.[1]

For these reasons we find that this is not

1. While recent cases suggest that most policies are covered by ERISA, the courts have not yet gone so far as to declare that all insurance policies are, by definition, a plan for ERISA purposes. Since the policy in the present instance has few of the features required for ERISA coverage, if we were to call this a plan, we would, in effect, be doing what courts have so far been loath to do in declaring that all policies, regardless of their purchase, administration and other feature, are under ERISA's control. In short, if we were to call this an ERISA plan, we would be unable to declare any policy anything other than an ERISA plan, making state insurance law extraneous.

a plan as defined by ERISA.[2] Louisiana law, therefore, applies. We must now consider the issue of penalties and attorney's fees.

Defendant refers this court to several cases on this issue. In *Barrilleaux v. Lalonde*, 471 So.2d 984 at 985 (La.App.4th Cir.1985), the court held that "when an insurer chooses to resist liability based on a supposed defense, which a reasonable investigation would have proved to be without merit, [the insurer] will be liable for statutory penalties." *Pinder v. Old Southern Life Ins. Co.*, 490 So.2d 821 (La. App.Cir.1986), reiterated the holding in *Barrilleaux*. Defendants attempt to distinguish these cases, claiming that their defense of the claim was with merit, as shown by defendant's repeated reviews and rejections. It is difficult to understand why defendant's reaching an erroneous conclusion after an inadequate review not once but several times would prove that this conclusion was meritorious.

Defendant also refers the court to *Moncrief v. Blue Cross/Blue Shield of Ark.*, 472 So.2d 299 (La.App.3d Cir.1985). In *Moncrief*, the court commented that the plaintiff's symptoms in that case would have caused "an ordinary prudent person to seek diagnosis, care or treatment." This court is in no way convinced that Mrs. Brady's symptoms were such that no ordinary prudent person would have failed to see a doctor.

Louisiana Revised Statute 22:657 provides that if the insurer fails to make payments in compliance with the statute, it shall be subject to "a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy ... together with attorney's fees." Under the terms of the stipulation, Defendant has thus far paid $26,-551.75 and has agreed to pay $779.52, for a total of $27,331.27. Under Louisiana law, we can, and do, hold that Defendant is responsible for an additional $27,331.27, in penalties.

Attorney's fees are "largely within the discretion of the trier of fact," *White v. Martin GMC Trucks, Inc.*, 359 So.2d 1094 (La.App.3d Cir.1978), *writ denied*, 367 So.2d 391 (La.1979), but certain factors are to be considered. These include: 1) attorney's legal knowledge and skill; 2) complexity of the issues involved, 3) the amount in controversy, and 4) the outcome of the case. *Goff v. John Hancock Mutual Life Ins. Co.*, 497 So.2d 747 (La.App.3rd Cir.1986). In this instance, the Plaintiff's attorney expended a considerable amount of time on this matter. Defendant forced him to jump over unnecessary obstacles, such as the aforementioned denial of the existence of a policy, which required a greater expenditure of time and skill than would otherwise have been required in a case such as this. We, therefore, find that the amount requested in attorney's fees, $10,000, is both just and reasonable.

## CONCLUSION

The Insurance Policy which covered the Bradys was not part of an ERISA plan, which means that ERISA does not apply. Louisiana law applies instead and, unlike ERISA, Louisiana law provides for penalties and attorney's fees in a case such as this.

Defendant has agreed to pay plaintiff the benefits under the policy. We hold that defendant shall also pay plaintiffs' attorneys fees in the amount of $10,000 and a penalty in the amount of $27,331.27.

---

**2.** The decision of whether or not this insurance coverage is a plan as defined by ERISA is an unusually difficult one, with persuasive arguments on both sides. This court, however, is not playing poker and cannot pass. We must make a decision and, after consulting the most recent jurisprudence, we are satisfied that there are better reasons for holding this an insurance policy only, rather than calling this an ERISA plan.