Dear Mr. Conner:
This office is in receipt of your request for an opinion of the Attorney General in regard to the location of the parish seat. You note that this office answered many of the preliminary questions in regard to the courthouse fire in Atty. Gen. Op. 02-126. You relate that there have been two attempts to move the parish seat from its present location in Pointe a la Hache, pointing out that the voters of Plaquemines Parish rejected West Pointe a la Hache in April of 2001 before the Parish Courthouse burned, and after the Courthouse fire, in October of 2003 they rejected Port Sulphur as a possible location for the new parish seat. There is at the present time a conflict over whether or not a new site proposal should be given to the voters to vote on, or whether construction should immediately begin to build a new courthouse. With respect to this situation you set forth the following questions:
 1. Regarding the delays to rebuild the Courthouse is there anything that can be done by the Plaquemines Parish Council or the residents of Plaquemines to immediately begin construction of the Courthouse in Pointe a la Hache?
 2. Is there a limit to the number of times the proposition to change the Parish seat can be put to vote? If so, what is the maximum number of times and is it related to the site selection? Example, if an attempt has failed at one site can that site be proposed again?
 3. The Plaquemines Parish Government is under a duty to rebuild the Courthouse at the Parish seat. What government agencies or offices are required to have space in the new Courthouse under state law?
In response to your question whether the parish council can do anything in regard to the delays to rebuild the courthouse, it appears that pursuant to R.S. 33:4715.2 that the matter was placed in the hands of the Plaquemines Parish Courthouse District, a political subdivision of the state, whose purpose was "to acquire or construct a new courthouse, including all matters relating to incurring debt and financing such activities as approved by the voters". However, in Section E of R.S.33:4715.2 it provides that the district would exercise the authority granted in the Section to the extent that sufficient revenues were authorized by the voters, and the parish governing authority would not exercise any authority which was in conflict with such exercise of such authority by the district. However, it further states, "To the extent that voters do not authorize the district to acquire sufficient revenues for the exercise of the authority granted in this Section the parish governing authority may, as it deems appropriate, exercise its own authority, as otherwise provided by law, to provide for the acquisition, construction, renovation, operation or maintenance of the parish courthouse."
Accordingly, it appears the parish council may exercise its own authority as provided by law in order to begin construction by any means they may legally take with regard to appropriation of funds, and in this regard we note that in Atty. Gen. Op 01-59 this office recognized that "the parishes are mandated to furnish office space for the district courts; and are granted specific constitutional authority to acquire property for any public purpose. LSA R.S. 33:4713; LSA Const. Article VI, Sec. 23."
In the latter opinion it was further observed that the district court may be entitled to a writ of mandamus to require the local governing authorities to appropriate the funds reasonably necessary to insure the effective operation of the court, citing McCain v. Grant Parish PoliceJury, 440 So.2d 1360 (La.App. 3rd Cir . 1983); Twenty-First JudicialDistrict Court v. State, 563 So.2d 1185 (La.App. 1st Cir. 1990)."
In this regard, R.S. 33:4713 mandates that each parish shall provide and bear the expense of a suitable building and requisite furniture for the sitting of the district and circuit courts and such offices, furniture and equipment as needed by clerks, recorders of the parish, and such other offices as may be needed by the sheriffs of these courts and the tax collectors and assessors of the parish.
We find nothing that would limit the number of times the proposition to change the Parish seat can be put to a vote, but in light of the mandate that each parish shall provide a suitable building for the court, it would have to be concluded that construction should be commenced without delay inasmuch as there have been two attempts to move the parish seat and the voters of Plaquemines Parish rejected both propositions for a change, and as a result of the fire there is no courthouse. As observed in Atty. Gen. Op. 96-325 a parish seat cannot be moved until suitable facilities are available at the new location for parish officials to conduct the affairs of the parish, and herein the move of the parish seat has been rejected by the voters. Thus, it would follow construction should commence at the present parish seat so that there are suitable facilities for the parish officials.
As related hereinabove, R.S 33:4713 provides each parish shall provide and bear the expense of a suitable building and requisite furniture for the sitting of the district and circuit courts, clerks and recorders, the sheriff of these courts, the tax collectors and assessors of the parish; and similarly R.S. 33:4715 mandates the police jury of each parish "shall provide a good and sufficient court-house, with rooms for jurors, and a good and sufficient jail, at such place as they may deem most convenient for the parish at large, provided that when the seat of justice is established by law, they shall not have power to remove it."
In response to your question as to which governmental agencies are required to have space in the courthouse at the parish seat, we find various statutory provisions that require certain governmental agencies have offices in the parish seat, but find the above cited statutes mandating the courthouse building for the offices of the courts, clerks, recorders, sheriff, tax collectors and assessor of the parish, and rooms for jurors the only provisions requiring these offices be in the courthouse.
We do note that R.S. 18:132 requires the parish governing authority to provide space for the registrar of voters principal office "in the courthouse or in close proximity thereto."
We also find in Atty. Gen. Op. No. 87-328, wherein the question was whether the district attorney could purchase a building for his office, this office found he could not. However, it referred to Op. Atty. Gen, 1934-36, p. 215 as interpreting almost identical language as R.S. 33:4713
to conclude that the police jury was required to furnish an office and equipment for the district attorney in the courthouse, but further noted that it had been concluded in Op. Atty. Gen. 1930-32, p. 380, that "where there was no office for the district attorney in the courthouse, the police jury could rent and equip one elsewhere."
We hope this sufficiently responds to your questions.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:_________________________ BARBARA B. RUTLEDGE Assistant Attorney General
CCF/bbr