492 So.2d 54 (1986)
Woodrow E. WILSON and Mary Catherine McLin Wilson
v.
H.J. WILSON CO., INC. and Huey J. Wilson.
No. CA 85 0187.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Rehearing Denied August 20, 1986.
Writ Denied November 7, 1986.
*55 Thomas E. Balhoff, Baton Rouge, for plaintiff-appellant Woodrow E. Wilson, Mary Catherine McLin Wilson.
Robert E. Barkley, Jr., New Orleans, for defendant-appellee H.J. Wilson Co., Inc., Huey J. Wilson.
Before LOTTINGER, SAVOIE and CRAIN, JJ.
LOTTINGER, Judge.
This is a suit to recover a number of shares of stock in H.J. Wilson Co., Inc. Plaintiffs, Woodrow E. Wilson and his wife, Mary Catherine McLin Wilson, appeal the judgment of the trial court granting summary judgment in favor of defendants, and the dismissal of plaintiffs' claims.
The facts of this matter were reported by this court in Wilson v. H.J. Wilson Co., Inc., 430 So.2d 1227 (La.App. 1st Cir.1983), a previous appeal of this matter. We adopt those facts for purposes of this appeal, and supplement pertinent facts, where needed.
On remand, the trial court conducted a hearing to determine defendants' motion for summary judgment and peremptory exception raising the objection of res judicata. Summary judgment on behalf of the defendants was granted, and plaintiffs' claims were dismissed. The exception was denied.
From this judgment plaintiffs have appealed, asserting the following as errors by the trial court:
(1) in granting defendants' motion for summary judgment because of genuine issues of material fact regarding defendants' *56 breach of the 1965 stock for stock agreement; and
(2) in granting defendants' motion for summary judgment because of genuine issues of material fact regarding fraud and/or the breach of fiduciary duties owed by Huey Wilson.
In addition, defendants have answered the appeal, asserting the following as errors by the trial court:
(1) in holding that the 1965 stock for stock agreement imposed a continuing obligation on defendants to recognize Woodrow as owner of 202 shares;
(2) in the alternative, defendants contend that summary judgment was proper and should be maintained on behalf of H.J. Wilson Co., Inc., and
(3) in denying defendants' peremptory exception raising the objection of res judicata.

APPEAL OF WOODROW E. WILSON

I
In his appeal, Woodrow questions the granting of summary judgment in favor of Wilson.
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. The mover has the burden of establishing the absence of material fact issues, and any doubt as to the existence of such fact issues is to be resolved against granting the motion. White v. Baker Manor Nursing Home, Inc., 400 So.2d 1168 (La.App. 1st Cir.1981).
To satisfy his burden, the party moving for the summary judgment must meet a strict standard by showing that it is quite clear as to what the truth is, and that there exists no real doubt as to the existence of any genuine issue of material fact. Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981). The papers supporting the position of the party moving for summary judgment are to be closely scrutinized, while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. Vermilion Corporation v. Vaughn, supra.
Any inferences to be drawn from the underlying facts contained in the materials before the court are to be viewed in a light most favorable to the party opposing the motion. Vermilion Corporation v. Vaughn, supra; Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983).
Summary judgment is not a substitute for trial, and it is not the function of the trial court to consider the merits of the issues raised, nor is the court to make credibility evaluations or weigh conflicting evidence. Watson v. Cook, supra; Dette v. Covington Motors, Inc., 426 So.2d 718 (La.App. 1st Cir.1983). Furthermore, summary judgment should be granted only where reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law. Big S Trucking Company, Inc. v. Gervais Favrot, Inc., 450 So.2d 369 (La.App. 1st Cir.1983).
In the present case, plaintiff made the following pertinent allegations in his petition and supplemental and amending petition:
5
On February 24, 1970, unbeknownst to plaintiff and for the purpose of defrauding him, defendants prepared stock certificate numbers 14 and 15 in the name of Woodrow E. Wilson for 123 shares and 79 shares respectively, said two certificates totaling 202 shares.
6
Defendants, without the knowledge and consent of plaintiff, thereafter purportedly cancelled stock certificate number 8 on the Company's stock transfer records, and this purported cancellation was done by defendants without securing or attempting *57 to secure endorsement and/or delivery of stock certificate number 8, which original certificate continued to remain in plaintiff's possession and safekeeping, where it remains at the present time.
7
Also, on February 24, 1970 as a further part of the scheme to defraud him and after defendants had prepared the aforementioned stock certificate numbers 14 and 15, defendant either forged or secured through fraudulent, manipulative or deceptive means, Woodrow's signature on the reverse side of stock certificate number 15, being for 79 shares, which purportedly transferred the 70 shares to Huey and reduced plaintiff's interest in the Company to 123 shares, all without benefit of consideration.
8
On February 15, 1971, as yet a further and additional part of the scheme to defraud him, defendants either forged or secured through fraudulent, manipulative or deceptive means, Woodrow's signature on the reverse side of stock certificate number 14 being for 123 shares, which purportedly transferred 35 of the 123 shares to Huey and reduced plaintiff's interest in the Company even further down to 88 shares and was once again without benefit of consideration.
* * * * * *
16
Because plaintiff's stock certificate number 8, for 202 shares was never transferred or cancelled in accordance with the endorsement and delivery requirements of the stock transfer laws of the State of Louisiana, La.R.S. 12:624, plaintiff was lawfully entitled to issuance in 1971 of reclassified stock based upon 202 shares;
....
17
Further, any purported cancellation of stock certificate number 8 and transfers of any of the 202 shares represented thereby to Huey was based upon the fraudulent actions and misrepresentations of defendants, and such cancellation and such transfers are rendered void and/or voidable because such fraudulent actions and misrepresentations constituted fraud in the execution and/or fraudulent inducement under State Contract law....
In addition, Woodrow testified by way of deposition that he had no reason to believe that his signature on the transfer agreement was forged, and that he had no recollection of the circumstances surrounding his signing of the agreement. However, Woodrow testified that he would have remembered if Wilson asked him to transfer some of his shares, but he could not remember such a request. Woodrow stated that he signed some papers represented by Wilson to be corporate affairs requiring his signature, as had been done many times in the past, and that had the transfer been brought to his attention, he never would have assented thereto.
Furthermore, Woodrow was never advised or requested to cancel or relinquish the original stock certificate for 202 shares, although such certificate was cancelled on the corporation's books. Also, he never saw the two new certificates and they were never placed in his possession. In addition, George Wilson, Wilson's other brother who held the same amount of shares as Woodrow, testified that he, like Woodrow, had apparently transferred some shares to Wilson without being informed of what he was signing. The circumstances surrounding his transfer are the same as Woodrow's, with Wilson requesting his signature on some papers represented as normal corporate affairs.
Contrary to all of this is Wilson's testimony that he had informed Woodrow of the need to transfer some of Woodrow's shares, and that Woodrow was fully aware that he was signing a transfer agreement.
*58 He testified that Woodrow knew he was endorsing the stock certificates, and that he was well aware that a transfer of shares was taking place.
In his reasons for judgment, the trial judge, after concluding that the stock for stock agreement constituted a continuing obligation to recognize Woodrow as owner, concluded the following:
(1) Woodrow Wilson is not accusing anyone of forging his name to certificate no. 15 in that he admits his signature is on the certificate.
(2) Woodrow Wilson just does not recall signing certificate no. 15.
(3) Woodrow Wilson recalls signing some papers at Huey Wilson's house, but does not recall what papers he signed despite having an opportunity to read the papers.
Based on these conclusions the trial judge granted the summary judgment, finding no existence of material issues of fact. However, based on the petitions of plaintiffs and the testimony set forth above, we conclude that material fact issues were present. One such issue is whether Woodrow knowingly and voluntarily signed the transfer agreement. Another such issue pertains to the alleged cancellation of Woodrow's initial stock certificate for 202 shares without Woodrow's consent, and the purported replacement of those shares with two new certificates which were not given to Woodrow. Furthermore, an issue regarding the corporation's failure to recognize Woodrow as owner of the 202 shares transferred in the agreement remains unanswered. These issues are genuine issues of material fact and any other conclusion would violate the well established rules regarding summary judgment as previously set forth.

II
The trial judge also granted a summary judgment against Wilson regarding Woodrow's allegations of fraud and misrepresentation surrounding the signing of the transfer. In doing so, the trial judge concluded that specific facts of fraud were not alleged and that Woodrow did not know of any facts constituting fraud. Furthermore, the judge concluded that Woodrow failed to make a case of fraud or the breach of fiduciary duty owed by Wilson.
Plaintiffs do not deny that they need allege facts underlying the fraud accusations, but contend that sufficient facts were alleged in the petition, depositions and federal court testimony. A reading of the quoted portions of plaintiffs' petition set forth above establishes allegations that defendants prepared two new stock certificates representing Woodrow's 202 shares; cancelled his original certificate without obtaining endorsement and delivery thereof; either forged or secured through deceptive means his signatures on the newly issued certificates, purportedly transferring the shares to Wilson and reduced Woodrow's ownership in the company, all without Woodrow's knowledge and consent and for the purpose of defrauding him of a number of shares.
These facts were specifically alleged and create issues of fact regarding fraudulent or deceptive practices by Wilson to induce Woodrow into transferring the shares. Although Woodrow does not deny that his signature appears on the certificates, issues remain as to how the signatures were obtained and the facts surrounding the transfer. We conclude that sufficient facts were alleged and granting of the summary judgment was error.
The trial judge's conclusions on both issues were based on the weighing of conflicting evidence and allegations, as well as considering whether plaintiffs will be able to meet their burden of proving the merits of the action. As set forth above, these considerations are issues to be decided at a trial on the merits and are not proper for determinations of summary judgment. Since the trial judge did otherwise, he committed reversible error.

APPEAL OF HUEY WILSON AND H.J. WILSON CO., INC.

I
In their first assignment of error, defendants contend the stock for stock agreement *59 did not impose a continuing obligation to maintain any shares of stock in Woodrow's name as found by the trial court. It is argued that nothing in the agreement precluded Woodrow from transferring his shares to an individual such as Wilson.
The trial judge concluded that the stock for stock agreement was a continuing obligation to recognize Woodrow as owner of 202 shares of stock. While it is true that nothing contained therein precludes Woodrow from transferring his shares to any individual, the corporation was under a duty to recognize Woodrow as owner of 202 shares of stock as long as he retained ownership thereof. This is what was concluded by the trial judge, as he stated in his written reasons: "Woodrow should be recognized as owner of the 202 shares until he disposes of any of the shares". Thus, the trial judge did not state that Woodrow must be maintained as owner even if he transferred some of his shares, as defendants would have us believe. Rather, he affirmed a duty implicit in every stock issuance regarding the recognition of the owner of shares, as owner, and the duty to not cancel a shareholder's on the corporate records without that owner's consent. Thus, no error was committed.

II
Defendants also allege that the transfers were between Wilson, as stockholder, and Woodrow, as stockholder, and as the corporation was not a party thereto, it was entitled to summary judgment. However, plaintiffs, in their petition alleged fraud by both Wilson and the corporation in cancelling the original stock certificate for 202 shares and issuing the new certificates without the consent of Woodrow. Furthermore, the corporation never obtained the original stock certificate from Woodrow. If true, the corporation, as well as Wilson could be held liable. Therefore, this allegation is meritless.

III
Finally, defendants contend it was error to deny its peremptory exception raising the objection of res judicata. They argue that although the federal suit was dismissed for reasons not before the trial court in this matter, the issues were the same as the present case, and relitigation should be barred by res judicata.
Res judicata precludes relitigation of the object of a judgment when there is (1) identity of the parties, (2) identity of "cause," and (3) identity of the "thing demanded." La.Civ. Code art. 2286[1]; Doyle v. State Farm (Mutual) Insurance Company, 414 So.2d 763 (La.1982). In the present case there is no doubt that the identity of the parties and the thing demanded are the same in both cases. However, the cause in the federal suit was based on federal securities laws, whereas the state suit was based on the laws of Louisiana. Furthermore the federal judge dismissed the federal claim, finding it had prescribed. He specifically refused to rule on the state claims which form the basis of the present lawsuit, even though they were alleged in the federal suit. Although the federal judge made certain factual conclusions in regards to the issue before him, i.e. prescription of the federal claims, such conclusions are not binding on the completely different issues which were before the trial judge. As such, the "cause" of the two suits is not the same and the peremptory exception raising the objection of res judicata was properly denied.
Therefore, for the above and foregoing reasons, the judgment of the trial court insofar as it granted defendants' motion for summary judgment is reversed and remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed at defendants' costs.
REVERSED IN PART, AFFIRMED IN PART AND REMANDED.
NOTES
[1] By Act 331 of 1984, La.Civ. Code art. 2286 was redesignated as La.R.S. 13:4231, which redesignation was neither an amendment nor a reenactment, effective January, 1985.