504 So.2d 970 (1987)
Nita M. DIETRICH
v.
TRAVELERS INSURANCE COMPANY and Roy & Kiesel, Attorneys at Law.
No. CA 86 0675.
Court of Appeal of Louisiana, First Circuit.
March 4, 1987.
*971 Richard L. McGimsey, Baton Rouge, for plaintiff-appellee Nita M. Dietrich.
A. Clay Pierce, Jr., Baton Rouge, for defendant-appellee Travelers Ins. Co.
Larry M. Roedel, Baton Rouge, for defendant-appellant Roy & Kiesel.
W. Shelby McKenzie, Baton Rouge, for third party defendant-appellee Gilsbar, Inc.
Boris F. Navratil, Baton Rouge, for third party defendant-appellee Continental Ins. Co., Commercial Ins. Co. of Newark, N.J., Kansas City Fire and Marine Ins. Co.
Docia L. Dalby, Baton Rouge, for third party defendant-appellee New England Ins. Co.
Kenneth E. Barnette, Baton Rouge, for third party defendant-appellee Common Point Restaurant, Inc.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
ALFORD, Judge.
Third party plaintiffs, Roy & Kiesel, attorneys at law, appeal the trial court's action in granting the motions for summary judgment which dismissed the third party defendants, New England Insurance Company and Gilsbar, Inc.
Roy & Kiesel employed the plaintiff, Nita M. Dietrich, as a secretary. While so employed, she was severely injured when she dove in the shallow end of a swimming pool. When she attempted to file a claim with Roy & Kiesel's medical insurance carrier, Travelers Insurance Company, her *972 claim was denied. She then filed suit against Travelers and Roy & Kiesel. Roy & Kiesel asserted a cross-claim against Travelers and third party demands against a number of other defendants, including their professional liability insurer, New England, and New England's agent, Gilsbar. New England moved for summary judgment in its favor, claiming that the portion of the insurance policy relative to employee benefits, which was issued after the incident involving Ms. Dietrich occurred, did not provide coverage. Gilsbar also moved for summary judgment, contending it did not breach any duty owed as an insurance agent. After reviewing the pleadings, depositions, answers to interrogatories and affadavits, the trial court granted both motions.
Roy & Kiesel appeal, claiming that factual and legal issues remained in dispute. A summary judgment shall be granted if "there is no genuine issue as to material fact" and if the "mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966. The law applicable to adjudicate these summary judgments is set forth in Wilson v. H.J. Wilson Co., Inc., 492 So.2d 54 (La.App. 1st Cir.1986), writ denied, 496 So.2d 355 (La.1986). Therein this court stated "[t]he mover has the burden of establishing the absence of material fact issues, and any doubt as to the existence of such fact issues is to be resolved against granting the motion." 492 So.2d at 56. Additionally, we said that "summary judgment should be granted only where reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law." 492 So.2d at 56.

NEW ENGLAND'S MOTION
An insurance policy is a contract between the insurer and insured and has the effect of law between the parties. Miller v. Duthu, 470 So.2d 500 (La.App. 1st Cir.1985), writ denied, 474 So.2d 1310 (La. 1985). While all ambiguities must be construed in favor of the insured and against the insurer, courts have no authority to change or alter policy terms under the guise of interpretation when such terms are couched in clear and unambiguous language. Moncrief v. Blue Cross-Blue Shield of Arkansas, 472 So.2d 299 (La. App. 3d Cir.1985).
In the instant case, Roy & Kiesel carried only a professional liability policy written by New England and issued through Gilsbar dated October 1, 1983, through October 1, 1984. Ms. Dietrich was injured on July 12, 1984. Subsequent to Ms. Dietrich's injury, and after reviewing the optional coverages available, on August 8, 1984, Roy & Kiesel decided to expand their coverage under their professional liability policy to include employee benefits liability. On their application to renew their professional liability policy, they indicated they wanted to add part of the Optional Extension III coverage to their policy relative to comprehensive liability. They answered "Yes" in response to the question on the application, "Is the proposed Insured aware of any prior incident, act, error or omission which there is reason to suppose might fall within the scope of the proposed insurance?"
In response to the renewal application requesting additional coverage and noting the prior incident, Gilsbar sent Roy & Kiesel a claim information form to be completed and returned. Mr. Paul West of Roy & Kiesel filled in the form relative to Ms. Dietrich's possible claim, indicating that the claimant incurred medical expenses and disability while apparently not covered by the firm's medical policy. New England's policy issued on November 8, 1984, with effective dates of October 1, 1984, through October 1, 1985, included additional coverage for employee benefits. The policy states, under Coverage 4 Comprehensive Liability Insurance, Section vEmployee Benefit Programs Liability:
E-When Insured: Coverage provided under this insurance applies only to:
1. Claims brought against the Insured while this insurance is in effect for acts that occurred before the effective date of this insurance provided that the Insured, at the effective date of this insurance, had no knowledge of or could not have reasonably *973 foreseen any circumstances which might result in a claim or suit;
Roy & Kiesel contend that because the policy was issued without a rider excluding Ms. Dietrich's claim, her claim was covered. They argue that only those claims known to them which they have not disclosed to the insurance company are not covered. Such an interpretation clearly strains the clear and unambiguous policy language which provides coverage for claims that occurred prior to the effective date of the policy only when such claims were unknown or unsuspected by the insured. Thus, under the explicit terms of the policy there is no coverage provided for Ms. Dietrich's claim.
Roy & Kiesel also argue that even if the terms of the policy exclude coverage, the policy should be reformed because of a conversation on November 6, 1984, between Mr. Roy and an employee of Gilsbar. After talking with the employee, Mr. Roy claims that he believed the Dietrich claim would be covered. However, he admitted that it was only his general impression that he had coverage and that he could not swear that the employee told him specifically that the potential problem would be covered. Gilsbar's employee, Ms. Gail Easley, admitted talking with Mr. Roy and Mr. West but stated she did not remember discussing coverage for the disclosed potential claim. She did say that she was aware of the policy exclusion on known claims and that she "wouldn't say that a claim someone is aware of would be covered."
The record shows that Gilsbar did not make decisions relative to policy coverages but referred the coverage request on to New England's managing general agent, Dependable Insurance Associates Incorporated, for action. Ms. Easley's notes indicated that the telephone conversation with Mr. Roy and Mr. West dealt with what optional coverages were requested and the cost of those coverages. Mr. West's follow-up letter to Gilsbar after the telephone conversation simply limited the types of optional coverages requested and confirmed the charge for the requested coverages. No mention was made of Ms. Dietrich's claim.
It is well settled jurisprudentially that reformation of a policy is proper only when there has been mutual error or negligent, fraudulent or mistaken conduct of the agent who issues the policy. See Raymond v. Zeringue, 422 So.2d 534 (La.App. 5th Cir.1982). In the instant case, it is apparent that there was no mutual error or negligent, fraudulent or mistaken conduct by the agent which would require reformation of the policy.
Additionally, the policy expressly limits how changes may be effected. The policy provides, under GENERAL CONDITIONSCoverage Parts 2-5:
I-Changes: Notice to any agent or knowledge possessed by any agent or by an other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

GILSBAR'S MOTION
Roy & Kiesel contend that Gilsbar failed to provide the requested insurance. In order for a client to recover from an insurance agent for a loss incurred because the agent failed to obtain requested coverage, the client must prove that the agent agreed to procure the insurance, that the agent failed to use reasonable diligence in attempting to secure the insurance and failed to notify the client promptly that the insurance had not been obtained, and that the actions of the agent warranted the client's assumption that he was properly insured. See Karam v. St. Paul Fire & Marine Insurance Company, 281 So.2d 728 (La.1973). In the instant case, the facts show that Gilsbar agreed to secure employee benefits liability insurance for Roy & Kiesel effective October 1, 1984, and that they did secure the requested insurance coverage effective on that date. Nothing on the application shows that Roy & Kiesel specifically requested or expected to receive coverage relative to Ms. Dietrich's *974 claim. In fact, Mr. Roy admitted he expected the claim to be excluded from the policy coverage and that he knew coverage was based on what the policy said and the surrounding facts. Therefore, it is evident that Gilsbar provided the requested insurance.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed in its entirety. Costs of this appeal are to be borne by Roy & Kiesel.
AFFIRMED.