527 So.2d 1074 (1988)
Victor J. ZUMO
v.
R.T. VANDERBILT COMPANY, INC., et al.
No. CA 87 0825.
Court of Appeal of Louisiana, First Circuit.
June 21, 1988.
*1075 John L. Avant, Baton Rouge, for plaintiff-appellant Victor J. Zumo.
James C. Lopez, Opelousas, for intervenor-appellant Copolymer Rubber and Chemical Co. and Liberty Mut. Ins. Co.
Daniel R. Atkinson, Baton Rouge, for defendant-appellee R.T. Vanderbilt Co., Inc.
Horace C. Lane, Baton Rouge, for defendant-appellee B.F. Goodrich Co.
Steven C. Judice, Baton Rouge, for defendant-appellee Alco Corp.
Edwin Fleshman, Baton Rouge, for defendant-appellee Goodyear Tire and Rubber Co.
Wood Brown, III, New Orleans, for defendant-appellee Pennwalt Corp.
*1076 Before COVINGTON, SAVOIE and LeBLANC, JJ.
LeBLANC, Judge.
This is a products liability case in which plaintiff, Victor J. Zumo, filed suit against the manufacturers of four chemicals to which he was exposed during the course of his employment with Copolymer Rubber and Chemical Corporation. Plaintiff maintains that his exposure to these chemicals caused him to contract a type of skin cancer known as mycosis fungoides. Those named as defendants in this suit were: R.T. Vanderbilt Company, Inc., Alco Chemical Corporation, Goodyear Tire & Rubber Company, Pennwalt Corporation and B.F. Goodrich Company.[1] Additionally, an intervention was filed by Copolymer and its worker's compensation insurer, Liberty Mutual Insurance Company, seeking recovery from defendants in the event that Copolymer and/or Liberty Mutual were held liable to plaintiff in a separate worker's compensation suit filed against them by plaintiff.
After answering plaintiff's petition, defendants filed motions for summary judgment alleging they were entitled to judgment as a matter of law because the cause of plaintiff's skin problems was his rare allergy to the chemicals involved, which were not unreasonably dangerous. For purposes of summary judgment only, defendants conceded causation between plaintiff's condition and his exposure to the stated chemicals. Several defendants also filed motions for summary judgment on the basis that plaintiff's cause of action was prescribed, because he was aware for more than a year before filing suit that he suffered from chronic contact dermatitis as a result of his allergy to these chemicals. The trial court denied summary judgment on the basis of prescription, but granted summary judgment in favor of defendants on the basis that the chemicals in question were not unreasonably dangerous. Plaintiff has appealed this judgment. Liberty Mutual and Copolymer have also appealed. Subsequently, Alco and Goodyear filed answers to plaintiff's appeal, and all defendants filed exceptions of prescription in this court seeking dismissal of plaintiff's suit on the additional basis of prescription.

FACTS
Plaintiff was employed at Copolymer from October 22, 1947, until he was terminated on July 31, 1983. Sometime in 1979, plaintiff began experiencing persistent problems with skin rashes. On October 31, 1979, he consulted Dr. Tom J. Meek, Jr., a dermatologist who diagnosed plaintiff's condition as allergic contact dermatitis. A skin patch test performed in March of 1980, established that plaintiff was allergic to several chemicals to which he was exposed at Copolymer. Dr. Meek informed plaintiff at that time that exposure to these chemicals was the cause of his chronic dermatitis.
According to his deposition testimony, plaintiff spoke to his superiors at Copolymer about being transferred to a section of the plant where he would be less exposed to these chemicals. Although some effort was apparently made to accommodate plaintiff's request, he testified that he was still occasionally required to work in areas where his exposure to these chemicals was considerable.
Plaintiff continued to suffer intermittent eruptions of rashes. He consulted Dr. Meek again on July 27, 1982, after which he continued to see Dr. Meek on a fairly regular basis. The results of a biopsy performed on February 4, 1982, were consistent with Dr. Meek's initial diagnosis. However, a later biopsy performed on March 8, 1983, indicated plaintiff had mycosis fungoides. Dr. Meek informed plaintiff of this diagnosis on March 11, 1983. The medical evidence presented indicates that the negative biopsy on February 4th is not conclusive proof that plaintiff did not have mycosis fungoides on that date. Rather, it *1077 merely established that there was no mycosis at that time in the area from which the biopsy was taken. The present suit was filed on July 7, 1983.

ISSUES
1. Whether plaintiff's cause of action for damages resulting from his mycosis fungoides was prescribed?
2. Whether there existed any genuine issues of material fact which precluded summary judgment?

PRESCRIPTION
The prescriptive period applicable to product liability cases is one year from the date damages are sustained. La.Civ. Code art. 3492. Prescription does not commence until the plaintiff has actual or constructive notice of the tortious act, the resulting damage and the causal connection between the two. Reed v. General Motors Corp., 400 So.2d 919 (La.App. 1st Cir.), writ denied, 406 So.2d 625 (1981). If it appears on the face of the pleadings that more than one year has elapsed between the occurrence of the tort and the filing of suit, the plaintiff has the burden of establishing an interruption or suspension of prescription. See, Lucas v. Commercial Union Insurance Company, 198 So.2d 560, 565 (La.App. 1st Cir.1967); Dixon v. Houck, 466 So.2d 57, 60 (La.App. 2d Cir. 1985). However, in Louisiana prescriptive statutes are subject to the discovery rule embodied in the doctrine of contra non valentem, to the effect that prescription does not run during a period in which the cause of action was not known or reasonably knowable to the plaintiff. Griffin v. Kinberger, 507 So.2d 821 (La.1987).
Mycosis fungoides is a distinct disease from that of allergic contact dermatitis. A diagnosis of allergic contact dermatitis is not synonymous with a diagnosis of mycosis fungoides. The fact that a person suffers from chronic dermatitis does not mean that he will inevitably develop mycosis fungoides.
According to the expert medical evidence presented herein, the precise date upon which plaintiff first suffered from and/or sustained damages from mycosis fungoides is indeterminable. Therefore, it is impossible to determine the exact date when plaintiff's cause of action for his damages from mycosis fungoides arose. It is clear, however, that more than one year elapsed between the time that plaintiff first learned he had chronic dermatitis as a result of his exposure to certain chemicals, and the filing of the present suit. However, there is absolutely no evidence that plaintiff was ever given any indication of the possibility that he could develop mycosis fungoides as a result of his chronic dermatitis.
The present case is akin to that of Brown v. State, Through Dept. of Correction, 354 So.2d 633 (La.App. 1st Cir.1977), in which the plaintiff knew for more than a year prior to having seventy (70%) percent of his stomach removed that he suffered from an acidic stomach condition. However, this court held that knowledge of this condition was not sufficient to put him on notice that he might sustain the loss of a large part of his stomach. The defendant's exception of prescription was accordingly denied.
Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Griffin, supra. Under the circumstances present, prescription did not begin running until March 11, 1983, which was well within one year of the time this suit was filed. The exceptions of prescription filed in the trial court were properly denied as are the exceptions filed by defendants in this court.[2] Plaintiff was not diagnosed as having mycosis fungoides until March 11, 1983. Before that date, he could not be expected to know he suffered *1078 from this disease since his own treating physician did not know prior to this date.

SUMMARY JUDGMENT
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits filed show that there are no genuine issues of material fact, and that the mover is entitled to judgment as a matter of law. La. Code of Civ.P. art. 966. The burden of establishing the absence of any genuine issues of material fact is upon the mover for summary judgment. Wilson v. H.J. Wilson Co., Inc., 492 So.2d 54 (La.App. 1st Cir.), writ denied, 496 So.2d 355 (1986). Summary judgment should be granted cautiously and sparingly, with any doubt as to the existence of issues of material fact to be resolved against granting the motion. Fort v. Atkins, 452 So.2d 363 (La.App. 1st Cir.1984). Further, a motion for summary judgment is not a substitute for trial, and it is not the function of the trial court in considering such a motion to weigh conflicting evidence or to consider the likelihood of the plaintiff prevailing on the merits. Wilson, supra; Gulf-Wandes Corp. v. Vinson Guard Serv., Inc., 393 So.2d 207 (La.App. 1st Cir.1980), writ denied, 397 So.2d 1359 (1981). Finally, summary judgment should be granted only if reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law. Wilson, supra.
Plaintiff and intervenors contend that the trial court erred in granting summary judgment in defendants' favor because of the existence of several genuine issues of material fact. Plaintiff seeks recovery herein on three theories of product liability: (1) that the chemicals in question were unreasonably dangerous "per se"; (2) that the chemicals were unreasonably dangerous due to defendants' failure to adequately warn of the possible danger inherent in their normal use; and, (3) that the chemicals were unreasonably dangerous in design.
The Supreme Court discussed each of these theories in Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986). The court explained that a product is unreasonably dangerous "per se" if a reasonable person would conclude that the danger of the product outweighs its utility. Halphen at 114. This test is commonly known as the danger-utility test. In applying this balancing test to a particular product, it is obviously necessary to examine both the danger presented by and the utility of the product at issue.
In this case, defendants presented information relating to the danger of the four chemicals in question, which they maintain is very small. Specifically, defendants filed affidavits and answers to interrogatories indicating that they were unaware of any or very few skin problems or claims resulting from exposure to these chemicals. It is not clear to this court that this evidence was sufficient in itself to establish the scope of the danger presented by the chemicals. Although relevant to the danger issue, this information really goes more to the issue of the foreseeability of danger. Regardless, no substantial evidence relating to the utility of these chemicals was presented to the court. Even if the inherent danger of the chemicals is not great, as asserted by defendants, it is possible that the danger may still outweigh their utility. This is a genuine issue of material fact, which is not resolved by the documents supporting defendants' motions for summary judgment.
Even if the chemicals are not unreasonably dangerous per se, plaintiff additionally argues that they were unreasonably dangerous by design, because there were alternate products available to perform the same needs with less risk of harm. See, Halphen at 115. Plaintiff contends that the fact that Goodyear no longer manufactures Wingstay is evidence of his position. While this fact may be relevant to a determination of whether alternate products were available, it is far from conclusive. Nevertheless, insufficient information was submitted by defendants to make this determination. This is another unresolved issue of material fact. The trial court *1079 erred in granting summary judgment in favor of defendants.
For the above reasons, the portion of the trial court judgment denying defendants' exceptions of prescription is affirmed. The portion of the trial court judgment granting summary judgment to defendants is hereby reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.
Defendants-appellees are to pay all costs of appeal.
AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.
NOTES
[1] The four chemicals involved are: Wingstay RWC 4396 (manufactured by Goodyear); Pennstop 1866 (manufactured by Pennwalt Corporation); Vulnopol N.M. (manufactured by Alco Chemical Company); and, Agerite Geltrol (manufactured by B.F. Goodrich and distributed by R.T. Vanderbilt).
[2] This case is distinguishable from those cited by defendants for the proposition that prescription begins running once the plaintiff knows that an injury and resulting damages have occurred, even if he is unaware of the full extent of his injury. In this case, plaintiff was not simply unaware of the extent of his injuries, rather he was totally ignorant of the fact that he had mycosis fungoides, a disease distinct from chronic dermatitis, until March 11, 1983.