581 So.2d 1023 (1991)
Richard TRANUM and Helen Tranum
v.
Aynaud F. HEBERT, M.D., Henry T. Cook, M.D., Stimpson Schantz, M.D., Eric Chang-Tung, M.D., M.D. Anderson Hospital and Tumor Institute, St. Paul Fire & Marine Insurance Co., and Insurance Corporation of America.
CA 900245.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Writ Denied September 20, 1991.
*1024 Pete Lewis, New Orleans, for plaintiffs-appellants.
Nancy J. Marshall, New Orleans, for defendants-appellees.
Before COVINGTON, C.J., and LANIER and GONZALES, JJ.
LANIER, Judge.
This action is a suit for damages in tort alleging medical malpractice. The husband and wife plaintiffs filed suit against seven defendants. Four of these defendants were dismissed from the suit without prejudice when the trial court sustained a dilatory exception raising the objection of prematurity. The three remaining defendants asserted they were residents of Texas, filed a declinatory exception raising the objection of lack of jurisdiction over the person and subsequently had the case removed to the United States District Court for the Eastern District of Louisiana (U.S. court). While this action was pending in the U.S. court, the plaintiffs added Dr. Charles C. Crumpler as a party defendant. The U.S. court remanded this action to the Louisiana trial court insofar as it pertained to Dr. Crumpler. Dr. Crumpler then filed a peremptory exception raising the objection of prescription which was sustained by the Louisiana trial court. This devolutive appeal followed.

PROCEDURAL FACTS
This suit was filed on August 19, 1987, and alleged medical malpractice in September and October of 1986. Made defendants were (1) Dr. Aynaud Foster Hebert, (2) Insurance Corporation of America (ICA), Dr. Hebert's insurer, (3) Dr. Henry T. Cook, (4) St. Paul Fire & Marine Insurance Company (St. Paul), Dr. Cook's insurer, (5) Dr. Stimpson Schantz, (6) Dr. Eric ChangTung, *1025 and (7) the M.D. Anderson Hospital and Tumor Institute (Anderson).
On September 18, 1987, Dr. Hebert, ICA, Dr. Cook and St. Paul filed a dilatory exception raising the objection of prematurity.[1] They asserted that Drs. Hebert and Cook were qualified health care providers within the purview of the Louisiana Medical Malpractice Act, La.R.S. 40:1299.41 et seq., and that pursuant to La.R.S. 40:1299.47(B)(1)(a), no action could be commenced against them in any court before the plaintiffs' complaint had been presented to a medical review panel. On November 3, 1987, the Louisiana trial court sustained this exception and dismissed the petition against Dr. Hebert, ICA, Dr. Cook and St. Paul without prejudice. The record before us does not reflect an appeal from this judgment. These defendants have not been rejoined as parties defendant.
On September 21, 1987, Anderson and Drs. Schantz and Chang-Tung filed a declinatory exception raising the objection of lack of jurisdiction over the person. They asserted that they were not residents of Louisiana, that their treatment of the plaintiff, Richard Tranum, took place in Texas, and no injury or damage occurred in Louisiana. On November 12, 1987, Anderson and Drs. Schantz and Chang-Tung filed a notice of removal of this action to U.S. court. At this point in time, the Louisiana trial court was divested of authority to proceed in this case against these defendants. 28 U.S.C.A. § 1441 et seq.; Succession of Moses v. Carr, 543 So.2d 77 (La.App. 1st Cir.), writ denied, 547 So.2d 362 (La.1989).
On August 1, 1988, the plaintiffs filed a supplemental and amending petition which made Dr. Crumpler a party defendant.
On August 25, 1988, the U.S. court rendered a judgment which provided, in pertinent part, as follows:
ORDER, ADJUDGE AND DECREE (1) that Plaintiffs' motion to reconsider and vacate the Court's prior order dismissing M.D. Anderson Hospital and Tumor Institute, Dr. Stimson [sic] Schantz and Dr. Eric Chang-Tung be denied; (2) that the motion for entry of final judgment filed by Defendants M.D. Anderson Hospital and Tumor Institute, Dr. Stimson [sic] Schantz and Dr. Eric Chang-Tung be granted; (3) that the motion of Defendant Dr. Charles C. Crumpler to dismiss Plaintiffs' complaint for lack of jurisdiction be denied; and (4) that the motion of Plaintiffs Richard Tranum and Helen Tranum to remand this action to the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, be granted.
The record does not show an appeal from this judgment.
On September 7, 1989, Dr. Crumpler filed a peremptory exception raising the objection of the liberative prescription of La.R.S. 9:5628. On October 5, 1989, the Louisiana trial court rendered judgment sustaining Dr. Crumpler's exception, and assigned the following written reasons:
The exception of prescription is maintained, on grounds that Dr. Crumpler is the sole remaining Louisiana defendant, and was not timely sued, suit having been filed against him on February 12, 1988. In paragraph XVII of the petition, petitioners allege that "they did not discover until October 28, 1986 that Mr. Tranum had in fact been misdiagnosed." Thus, the date of discovery of the malpractice was October 28, 1986.
The alleged malpractice by Dr. Crumpler, the misreading of slides from plaintiff's biopsy, occurred some time in September of 1986, during plaintiff's stay at Slidell Memorial Hospital.
The original petition, filed against Drs. Hebert and Cook (the "Louisiana defendants"), and Drs. Schantz, Chang-Tung, and M.D. Anderson Hospital and Tumor Institute (the "Texas defendants") reflects that plaintiffs were aware that a biopsy had been taken and slides prepared from the biopsy. (Paragraph IV)

*1026 Further, on September 2, 1987, petitioners subpoenaed the biopsy slides from Slidell Memorial Hospital.
An exception of prematurity was filed on behalf of the Louisiana defendants, who were qualified health care providers, and as such, entitled to review by a medical review panel. The remaining Texas defendants removed the case to federal court, where it was subsequently dismissed for lack of personal jurisdiction. Thus, the sole remaining defendant in this case is Dr. Charles Crumpler.
Inasmuch as he was not sued within a year of the discovery of the misdiagnosis and all defendants with whom he was allegedly solidarily liable were dismissed from the lawsuit, the cause of action against him has prescribed. The provisions of La.R.S. 40:1299.41(G) do not apply, inasmuch as there is no defendant with whom Dr. Crumpler was "answerable in solido", such that the convening of the medical review panel would suspend prescription for ninety days.
Dr. Crumpler could not be found liable in solido with the Texas defendants, since they were dismissed from the Louisiana lawsuit.

FACTS
La.C.C.P. art. 931 provides, in pertinent part, as follows:
On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition.

(Emphasis added)
In the instant case, no evidence was presented in the Louisiana trial court at the hearing on the exception.[2] In the absence of evidence, the objection of prescription must be decided upon the facts alleged in the petition, and all allegations thereof are accepted as true. Capital Drilling Company v. Graves, 496 So.2d 487 (La.App. 1st Cir.1986).
Pursuant to La.C.C.P. art. 2164, an appellate court must render its judgment upon the record on appeal. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, jury instructions, judgments and other rulings, unless otherwise designated. La.C.C.P. arts. 2127 and 2128; Official Revision Comment (d) for La.C.C.P. art. 2127. An appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Davis v. Anderson, 451 So.2d 1302 (La.App. 1st Cir. 1984). The record before us contains memoranda (briefs), with attached exhibits, which were filed in the trial court. These memoranda and exhibits were not filed in evidence and are not part of the record on appeal. In State ex rel. Guste v. Thompson, 532 So.2d 524, 527, n. 2 (La.App. 1st Cir.1988) appears the following:
The briefs of the parties assert facts which are not in the record and refer to exhibits which have not been filed in evidence in the record. An appellate court may not consider evidence which is outside the record. La.C.C.P. art. 2164. The briefs of the parties and the attachments thereto are not part of the record *1027 on appeal. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir. 1984). In addition, we may not consider exhibits filed in the record which were not filed in evidence, unless authorized by law to do so. See, for example, La.C. C.P. arts. 966 and 967.
See also Leyva v. Laga, 549 So.2d 914 (La.App.3rd Cir.1989). Further, the appellate briefs of the parties herein assert facts not contained in the petition or the record on appeal. The appellate briefs of the parties are not part of the record on appeal, and this court has no authority to consider on appeal facts referred to in appellate briefs, or in exhibits attached thereto, if those facts are not in the record on appeal. Capital Drilling Company v. Graves, 496 So.2d at 489; Fred H. Moran Construction Corporation v. Elnaggar, 441 So.2d 260 (La.App. 1st Cir.1983).
The pertinent facts alleged in the petition, as amended, are as follows:

IA.
Defendant, Dr. Charles C. Crumpler, at all material times involved in this action, was not a Qualified Health Care Provider (See Exhibit 1 herein attached); however he was working as a pathologist for Slidell Memorial Hospital and was a resident of the Parish of St. Tammany, State of Louisiana.
. . . . .
III.
On or about September 19, 1986, petitioner, Richard Tranum, came home from work very sick and had been spitting up blood earlier in the day so he and his wife, petitioner Helen Tranum, called Dr. Cook (family physician for over 16 years) and made an appointment immediately. Upon examination Dr. Cook recommended hospitalization to which Mr. Tranum agreed and later that day he was admitted to Slidell Memorial Hospital.
IV.
During the stay at Slidell Memorial Hospital plaintiff, Richard Tranum, was under the care of Dr. Hebert and Dr. Hebert who ordered a biopsy to be taken and slides prepared for the biopsy; and, that those slides were given to Dr. Crumpler (as per a policy of Slidell Memorial Hospital), while working as a pathologist for Slidell Memorial Hospital, who incorrectly read the slides and misdiagnosed Mr. Tranum's slide to be cancerous; and, Dr. Crumpler should be additionally held liable jointly and in solido with the other defendants.
. . . . .
V.
Dr. Hebert told the plaintiffs "Mr. Tranum is doing fine. We found a small tumor which is about one (1) centimeter in size on the back side of the trachea. It is malignant but in the early stages from what we can see. There are several ways to treat this and I would say the easiest is to cut it out and we know that would get it all but it would mean removing the voice box and that's not for me to say, I would have to talk with the other Doctors. I want to say that this tumor is rare. The tumor itself is not rare but where its [sic] located is rare. Most likely he'll make the medical journals."
VI.
After his release from the hospital Dr. Cook instructed plaintiffs to come to his office on the following Tuesday, September 30, 1986. On that date plaintiffs met with Dr. Cook at his office and were told that Dr. Hebert wanted to do the surgery in Slidell but Dr. Cook said Slidell was not equipped to handle that type of surgery so after several possibilities were considered Dr. Cook suggested Dr. Stimpson Schantz with M.D. Anderson Hospital and Tumor Institute in Houston, Texas. Dr. Cook called and made all the arrangements and then told plaintiffs what arrangements had been made for them to go there and have the surgery by Dr. Schantz.
VII.
Plaintiff flew to Houston on or about October 5, 1986 but the appointment with *1028 Dr. Schantz was not until the following day. The plaintiffs were not given their complete records to take with them and the plaintiffs had to call Dr. Cook from Texas and request him to send the file in the U.S. Mail that same day.
VIII.
During this time the plaintiffs met with Dr. Schantz and several other doctors at M.D. Anderson Hospital. On October 6, 1986 these same doctors including Dr. Schantz examined Mr. Tranum and records the plaintiffs had brought with them. This was when Dr. Schantz noticed the complete records were not present and Mrs. Tranum had to call Dr. Cook as mentioned above. Then while Dr. Schantz was again examining Mr. Tranum's reports he stated they looked very thorough and they showed a very small tumor on the back side of the voice box in the early stages (he was looking down Mr. Tranum's throat as he was talking). Dr. Schantz kept talking about different treatments but he wanted Dr. Chang-Tung the Chief of Radiology to see him first. Dr. Schantz felt that was the best way to start.
IX.
Dr. Chang-Tung then came into the examination room and looked at the records and Mr. Tranum's throat. He then said that the records show a small malignant tumor in the early stages so "I think the best way to treat it first by x-ray treatment, that includes seven (7) weeks of treatment five (5) days a week and we'll set up the appointment for the 15th and now I'd like for you to see Dr. Jacobs; she is an oral surgeon." Dr. Chang-Tung wanted to start the x-ray treatments right away but had to wait until the oral surgeon was finished preparing Mr. Tranum for the treatments and surgery of the throat by removal of the teeth (they must be removed to give room for the doctors to work).
X.
X-rays were taken at the oral surgeon's station and the plaintiffs were told to be back at 9:00 A.M. the next day for the extraction of eight (8) of his back teeth. Dr. Jacobs removed the eight (8) back teeth and then told the plaintiffs: "You should be in the hospital but we don't have space available" so she, Dr. Jacobs, packed his gums and the plaintiffs walked back to the hotel and spent the entire night awake due to the problems Mr. Tranum experienced with pain. The plaintiffs were sent home until Mr. Tranum's gum healed.
XI.
On or about October 13, 1986 the plaintiffs returned to M.D. Anderson Hospital to see Dr. Schantz. Dr. Schantz told the plaintiffs: "Mr. Tranun [sic] I've been looking at your slides and I don't see any cancer so I'm going to set up a bronchoscope in the morning of the 14th." Mr. Tranum said: "I'm going to cancel the radiation treatment until I know more." Dr. Schantz said: "I'll do it." The next morning the plaintiffs were back again at the clinic, M.D. Anderson Hospital, and Mr. Tranum had the bronchoscope and then he was told that the results would not be known until October 17, 1986.
. . . . .
XIII.
On or about October 27, 1986 the plaintiffs returned to see Dr. Schantz and were told that the bronchoscope results were negative for cancer and it looks great. Plaintiffs asked why was [sic] eight (8) of Mr. Tranum's teeth pulled? Dr. Schantz said: "I guess at the time that was the best treatment." Plaintiffs asked why the teeth were pulled before you read the slides? Dr. Schantz looked at plaintiffs and said: "I don't know, I can't answer thatbut I think we should go in for exploratory surgery for I feel a thickness and I want to be damn sure."
. . . . .

*1029 XV.
On or about October 28, 1986 Mr. Tranum was taken to surgery for about two hours. Dr. Schantz then came out and said that Mr. Tranum did real well and that they, the doctors, found nothing but an enlarged thyroid lobe so that was removed. After it was examined under the microscope it was confirmed to plaintiffs that he did not have a cancerous tumor. Mr. Tranum's throat was cut from ear to ear for the surgery. The final diagnosis that was given to Mr. Tranum for the condition was "UNABLE TO FIND ANY EVIDENCE OF CANCER IN OUR NECK EXPLORATION. HE DID HAVE AN ENLARGED LEFT LOBE OF THE THYROID ..." and a letter was sent to Dr. Cook by Dr. Schantz explaining his findings and thanking him for the referral of Mr. Tranum.
XVI.
Plaintiffs requested Dr. Cook and Hebert to correct the diagnosis since it was determined that Mr. Tranum did not have cancer of the voice box. Both Dr. Hebert and Cook refused to change the original diagnosis but would only now say that the biopsy which was taken removed all of the cancer cells and that was why it was not there when Dr. Schantz did the surgery.
XVII.
Your petitioner believes and contends that a simple bronchoscope test, before there was a confirmed diagnosis of cancer and the implemented treatment for such cancer, would have prevented the petitioners the physical and mental pain not to mention the needless loss of eight (8) teeth and complication associated with the surgeries if a proper diagnosis would have been made of his medical condition prior. Petitioners further contends [sic] that they did not discover until October 28, 1986 that Mr. Tranum had in fact been misdiagnosed.
. . . . .
XII. [sic]
Your petitioner further contends that the misdiagnosis of the condition occurred as a result of the physicians which are defendants herein and the medical facility not exercising due diligence and care for petitioner's medical care and treatment, especially in light of the fact that petitioners relied on their expertise and knowledge before giving their consent to all practices and procedures done by those physicians and facility.

OBJECTION OF PRESCRIPTION

(Assignment of error 1)
The plaintiffs contend "[T]he Trial Court erred in sustaining the Exception of Prescription in failing to find that prescription was interrupted by virtue of the Appellant's filing against a tortfeasor answerable in solido with others." In response to this argument, Dr. Crumpler asserts the following:
The Medical Review Panel exonerated Drs. Cook and Hebert. A suit was never instituted against them. Thus, the only defendant in the Louisiana suit is Dr. Crumpler.
Amending the petition, naming a defendant after one-year prescriptive period has run, does not timely interrupt prescription if all the timely sued alleged solidary obligors are dismissed from the suit. See, Saucier v. Rego Company, 508 So.2d 1038 (La.App.3d Cir.1987).
Dr. Crumpler asserts the liberative prescription of La.R.S. 9:5628(A) which provides, in pertinent part, as follows:
No action for damages for injury or death against any physician, ... hospital duly licensed under the laws of this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such *1030 discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Liberative prescription is a mode of barring actions as a result of inaction for a period of time. La.C.C. art. 3447. If the facts alleged in a petition do not show that a claim has prescribed, the burden is on the party raising the objection of prescription to prove it. Strata v. Patin, 545 So.2d 1180 (La.App. 4th Cir.), writs denied, 550 So.2d 618 (La.1989); State ex rel. Guste v. Thompson, 532 So.2d at 527. Conversely, if a claim is prescribed on the face of the pleadings, the burden is on the plaintiff to show that prescription has not tolled because of an interruption or a suspension. Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So.2d 1060 (La.App. 1st Cir.), writ denied, 567 So.2d 109 (La. 1990); Zumo v. R.T. Vanderbilt Company, Inc., 527 So.2d 1074 (La.App. 1st Cir. 1988).
The record on appeal shows the following operative facts:
1. on September 19, 1986, Mr. Tranum became ill and consulted Dr. Cook and Dr. Hebert, both of whom were residenced and licensed health care providers in Slidell, Louisiana;
2. Mr. Tranum was admitted to the Slidell Memorial Hospital where a biopsy was taken from his throat and his medical condition was misdiagnosed as a small tumor on the back side of the trachea;
3. on September 30, 1986, Mr. Tranum was referred by Dr. Cook to Dr. Schantz at Anderson in Houston, Texas;
4. on October 5, 1986, Mr. Tranum went to Houston to consult with Dr. Schantz;
5. on October 7, 1986, eight of Mr. Tranum's teeth were removed pursuant to instructions from Drs. Schantz and Chang-Tung;
6. on October 14, 1986, Mr. Tranum had a bronchoscope performed on him;
7. on October 27, 1986, Mr. Tranum was advised by Dr. Schantz that the bronchoscope was negative;
8. on October 28, 1986, Dr. Schantz performed surgery on Mr. Tranum and confirmed there was no evidence of cancer;
9. on August 19, 1987, this suit was filed;
10. on November 3, 1987, the Louisiana trial court sustained the dilatory exception raising the objection of prematurity and dismissed the petition against Drs. Hebert and Cook (and their insurers) without prejudice;
11. on November 12, 1987, Anderson and Drs. Schantz and Chang-Tung removed this case to U.S. court;
12. on August 1, 1988, Dr. Crumpler was made a party defendant to the suit; and
13. on August 25, 1988, the U.S. court entered a judgment which dismissed the suit against Anderson and Drs. Schantz and Chang-Tung and remanded the suit against Dr. Crumpler to the Louisiana trial court.
The plaintiffs' original and supplemental and amending petitions allege facts which, if proven, could result in solidary liability for all seven original defendants.[3] Pursuant to La.C.C. art. 3462, prescription was interrupted when the plaintiffs filed suit against Drs. Hebert and Cook on August 19, 1987.[4] The interruption of prescription against one solidary obligor is effective against all solidary obligors. La. C.C. art. 1799. This interruption applies to those solidary obligors made parties defendant in the suit and to those solidary obligors who were not made parties defendant in the suit (such as Dr. Crumpler). Chalstrom v. Desselles, 433 So.2d 866 (La.App. 4th Cir.), writ denied, 438 So.2d 215 (La. 1983). This interruption continued until the suit against Drs. Hebert and Cook was dismissed without prejudice on November *1031 3, 1987. La.C.C. art. 3463. At this point in time, the one year prescriptive period of La.R.S. 9:5628 began to run anew and the plaintiffs had the full prescriptive period of one year (until November 3, 1988) to commence a new suit. La.C.C. art. 3466; Revision Comment (b) for La.C.C. art. 3463; Batson v. Cherokee Beach and Campgrounds, Inc., 530 So.2d 1128 (La.1988); Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986); Hernandez v. Lafayette Bone & Joint Clinic, 467 So.2d 113 (La.App.3rd Cir.1985); E. Hackenberg, Puttering About in a Small Land: Louisiana Revised Statutes 9:5628 and Judicial Responses to the Plight of the Medical Malpractice Victim, 50 La.L.Rev. 815, 832-833 (1990). The filing of the supplemental and amending petition against Dr. Crumpler on August 1, 1988, was timely and prescription was again interrupted.[5]
This assignment of error has merit.[6]

DECREE
For the foregoing reasons, the judgment of the trial court which sustained the peremptory exception raising the objection of prescription is reversed and this action is remanded to the Louisiana trial court for further proceedings.[7] Dr. Crumpler is cast for the cost of this appeal.
REVERSED AND REMANDED.
NOTES
[1] A suit is premature when the cause of action upon which it is based has not come into existence because some prerequisite condition has not been fulfilled. Steeg v. Lawyers Title Insurance Corporation, 329 So.2d 719 (La.1976); Fidelity & Guaranty Insurance Company v. Succession of Smith, 525 So.2d 348 (La.App. 1st Cir. 1988).
[2] The minute entry for the hearing on the exception held on October 4, 1989, states the following:

This matter being on assignment today on an exception of prescription; present, Peter Lewis, Attorney for plaintiff and Patrick J. Berrigan and Nancy Marshall, Attorneys for defendant, the matter was argued by counsel and submitted to the Court; Whereupon Court maintained the exception of prescription.
A transcript was made of the argument of counsel and filed in the record. No testimony was given; no documentary evidence was filed; and no stipulations were made. At this hearing, counsel for the plaintiffs argued (1) the alleged misdiagnosis by Dr. Crumpler in Louisiana and the alleged malpractice by Anderson and Drs. Schantz and Chang-Tung in Texas were part of a continuous course of conduct for which all were solidarily liable and that the timely filing of suit against Anderson and Drs. Schantz and Chang-Tung in Texas timely interrupted prescription against Dr. Crumpler in Louisiana, and (2) the plaintiffs did not reasonably discover the malpractice of Dr. Crumpler until depositions were taken in 1988, and, thus, the filing of the supplemental and amending petition against Dr. Crumpler in August of 1988 was timely.
[3] Solidary liability is not specifically alleged in the original petition, but it is alleged in the supplemental and amending petition. Compare Scott v. Burden, 527 So.2d 468 (La.App. 5th Cir.1988).
[4] It has not been asserted that the Twenty-second Judicial District Court was not a competent court or a proper venue for Drs. Hebert, Cook and Crumpler.
[5] The plaintiffs also contend that filing suit in Texas state court against Anderson and Drs. Schantz and Chang-Tung timely interrupted prescription. There is no evidence of this suit in the record. Brister v. Southern Baptist Hospitals, Inc., 555 So.2d 641 (La.App. 4th Cir.1989). See also Taylor v. Liberty Mutual Insurance Company, 566 So.2d 1023 (La.App.3rd Cir.), writ granted, 571 So.2d 619 (La.1990).
[6] Because we find that the plaintiffs' assignment of error number 1 has merit, it is unnecessary to review assignments of error 2, 3 and 4 which assert the following:

2. The Trial Court erred in failing to find prescription was interrupted by virtue of appellant's filing within sixty (60) days of being notified Dr. Crumpler was not a qualified health care provider under La.R.S. 40:1299-47(A)(2)(A).
3. The Trial Court erred in failing to find prescription was interrupted by virtue of appellant's filing within ninety (90) days of Medical Review Panel formation under La. R.S. 40:1299.41(g).
4. The Trial Court erred in failing to find appellants' suit against Dr. Crumpler was filed within one (1) year of the discovery of Dr. Crumpler's malpractice under La.R.S. 9:5628.
[7] As previously indicated, the parties have argued many facts that are not in the record on appeal. Essentially, the merits of this exception have been judged on the facts alleged in the petition as amended. In this procedural posture, it is appropriate to reserve to Dr. Crumpler the right to reurge the objection of prescription, if subsequently proven facts support it. See, for example, Hebert v. Doctors Memorial Hospital, 486 So.2d at 725, n. 13; Leyva v. Laga, 549 So.2d at 917.